CARLTON *v.* CARLTON.

5-450                                             269 S. W. 2d 313

Opinion delivered June 21, 1954.

*David L. Ford,* for appellant.

*Floyd E. Barham,* for appellee.

SAM ROBINSON, J. The issue here is the custody of
two children. Appellant Robert W. Carlton and appellee,
who is now Sally Kopisca, were married the first time
in 1942. Two children were born of that marriage. Ap-
pellant and appellee were divorced in 1948; in that case
Sally was given custody of the children. Later Robert
married another person, but they lived together only 9
days and were divorced. Subsequently Robert and Sally
again married, but lived together only about a year when
Sally left and went to the home of her mother in Minne-
sota, leaving the children with Robert. Sally testified she
left Robert because he abused her to such an extent that
she could not live with him. Later Robert filed suit in
the Sebastian Chancery Court asking for a divorce, which
was granted, and he was given custody of the children.
That decree were entered December 1, 1951. Later Sally
married her present husband, John Kopisca; also Robert
married for the fourth time, but he and his new wife lived
together only 18 days when they separated.

On the 15th day of December, 1953, Sally filed a motion to modify the decree of December, 1951, asking that she be given custody of the children. After a full hearing the Chancellor granted the motion. From the order changing the custody from the father to the mother comes this appeal.

It would serve no useful purpose to abstract the testimony here, since in no two cases of this kind are the facts the same; and each case necessarily must be decided by its particular facts. The Chancellor heard and saw the parties, the witnesses, and the children involved, and after hearing all the testimony and arguments, the Chancellor said: "This lawsuit has developed more into a contest between the grandmother [the father's mother] and the mother. . . . I am not going to say that either side is bad. I am not going to say that the children could not be brought up in the old house out there [the grandmother's house] and reach maturity and make fine adults, because I know that many people have come up from circumstances such as these, so far as money is concerned, and have done mighty well in this country. In fact, this country might be in a bad shape except for some people who came from such circumstances. I am thinking of the stability of mind and the character of the people. Whether this mother was bad at one time, I don't know. Probably she did do something at one time that she should not have done, and she has honestly said so. But it is also true that Mr. Carlton does not have the best record. His mother said he drank a great deal at one time; his present marital status is uncertain. Of course, his last wife did not leave him because Mrs. Kopisca was coming down and might cause trouble, because his present wife left him before any mention was made of bringing this action, so it was some other cause that separated them. They lived together 18 days; if that were a stable marriage, the separation would not have happened, and she [Robert's present wife] would go back with him now and stay right in there and fight for him and help him get these children. She has just been a convenient witness in this case. I am inclined to think that the old grand-

mother has not always been too careful with her language. . . . The property where her son lives is hers; she will say what happens. The only thing that halts me and makes me shudder and wonder what will occur in the future is whether the mother of these children and her husband will continue to agree and make a good home as long as they live; because if I give them the children, their happiness will depend on that. This little boy and girl will not understand, but I wish they could, that the court has their interest at heart and their well-being for the rest of their lives, in making this decision. In a few other cases in my life I have heard testimony indicating that a mother some time in her life had been an unfit person to have custody of her children, and yet I reached the conclusion that after another marriage and settling down and facing life she had straightened up and would, if given an opportunity, during the rest of her life make a good mother and a good citizen. There is too much forgiving the man if he makes such mistakes, but letting the stigma rest on the woman always. I am inclined to think that, with the mother and her husband up there, they will have a better home, better surroundings. Therefore it will be the order of the court that the decree heretofore made will be modified and the mother will be awarded the custody of these children.''

At the time the father was given the custody of the children, the mother had no home, no way of supporting them, and no place to take them; but now she has a good home, a good husband, and a place for them. Thus there is a change of circumstances and we can not say that the court's order changing the custody of the children is not justified by the situation of the parties as it now exists.

Affirmed.